## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARL JAMIESON, KENNETH LYNCH,           )
AARON BORST, SHAWN CALEF,               )
NATHAN COOK, ANGELA DOWNEY,             )
RHONDA FOWLER, JAMES HADLEY,            )
BRYAN HUDSON, TIANA KENNEDY,            )
KENNETH MILLER, LUIS NAVARRO,           )
SHANNON POUND, BIBI SANANIKONE,         )
SCOTT A WARD, JANE M. WIRSIG            )
k/n/a JANE M. WARD, CLIFF ZOLLMAN       )
and all other similarly situated current )
and former students,                    )
                                         )
      Plaintiffs,                          )
                                         )
v.                                       )          Case No. 06-1103-WEB
                                         )
VATTEROTT EDUCATIONAL CENTER,           )
INC. d/b/a/ VATTEROTT COLLEGE,          )
                                         )
      Defendant.                           )

### MEMORANDUM AND ORDER

Now before the Court are Defendant's motions to dismiss under Fed. R. Civ. P. 12(b)(6),

failure to state a claim upon which relief can be granted.  Plaintiffs assert causes of action under

theories of fraud, breach of contract, and the Kansas Consumer Protection Act (KCPA).  Subject

matter jurisdiction under 28 U.S.C. § 1332(a) is not disputed.  Plaintiffs filed a complaint to which

Defendant filed a motion to dismiss.  (Docs. 1, 9).  Plaintiffs filed an amended complaint shortly

thereafter, to which Defendant filed another motion to dismiss, which incorporated the arguments

of the first.  (Docs. 12, 13).  The Court will address both motions.

### I. Nature of the Case.

The following facts, as alleged in Plaintiffs' complaint, are accepted as true for purposes of

this motion.

Vatterott is an educational institution that provides occupational training in various fields, including computer programming, computer aided drafting, medical office assistance, electrical mechanic, and heating, ventilation, air-conditioning, and refrigeration courses of study.   All plaintiffs, except Tiana Kennedy, were enrolled in one of Vatterott's above listed programs for at least a year.

Before and during Plaintiff's enrollments at Vatterott, agents and employees of Vatterott, including admissions representatives, financial aid representatives career service representatives, and course instructors (hereinafter referred to as "representatives"), made specific verbal and written representations regarding the type and quality of education Plaintiffs would receive.   These representations included information about: the completeness of the courses of study; the qualifications and competence of the faculty; the materials and equipment provided by Vatterott as part of the courses of study; the accreditations Vatterott had received for the courses of study; Vatterott's job placement rates; and type and level of skills, training, and education Plaintiffs would obtain upon completion of their courses of study and their ability to obtain entry-level positions. Vatterott made similar written representations through the mail.

In consideration for the payment of tuition and fees of approximately $20,000 by each Plaintiff, Vatterott promised to "furnish[] a complete [60 week] program, teachers, equipment, laboratories, classrooms and other facilities necessary for teaching those programs at the stated offered tuition cost for the program."  (Pl. Exs. A, B).  In consideration for, and in reliance upon, the promises and representations made by Vatterott and its representatives, Plaintiffs individually entered into Enrollment Agreement contracts with Vatterott.  (Id.).

2

After enrolling and participating in their respective courses of study, Plaintiffs learned that many of the promises and representations made by Vatterott and its representatives were false. Specifically, many of the faculty members were not qualified to instruct the courses of study; much of the materials and equipment necessary for acquiring necessary skills and completing the courses of study were either broken or not provided; job placement rates were substantially lower; the courses of study were not accredited and the curriculum was not sufficient to qualify Plaintiffs for entry-level employment.

Upon completion of their respective courses of study, Plaintiffs had not obtained the education and skills necessary to obtain entry level employment.  Plaintiffs either were denied entry level employment or offered positions at levels lower than their education otherwise would have merited had they received the type and quality of instruction promised and represented by Vatterott and its representatives. .

To support allegations of KCPA violations and fraud, Plaintiffs claim Defendant and its representatives knowingly made false representations about the qualifications and possession of its sponsorships, accreditations, placement rates, status, affiliations, connections, and affiliations. Vatterott and its representatives knowingly made false representations without a reasonable basis that its services were of a standard, quality, or grade when its services were materially different from those representations.  Vatterott and its representatives, in both oral and written representations, willfully used exaggeration, falsehood, innuendo, and ambiguity regarding material facts relating to its services.  Vatterott and its representatives willfully concealed, suppressed, and omitted material facts relating to its services.  Vatterott took advantage of the Plaintiffs' respective individual inabilities to protect their interests because of their lack of familiarity with the subject

matter of the consumer transaction.  The tuition and fees for the respective courses of study grossly exceeded the prices at which similar services were readily obtainable from other institutions. Plaintiffs were unable to derive any material benefit from the consumer transaction entered into with Vatterott.  Vatterott knew Plaintiffs would be unable to derive any material benefit from the consumer transaction.  The false representations induced Plaintiffs into entering into Enrollment Agreements.

## II. Rule 9(b).

Plaintiffs' complaint alleges that Defendant committed fraud and violated the KCPA. Defendants argue that Plaintiffs have failed to plead these claims with particularity in accordance with Rule 9(b) and their claims should be dismissed.  Fed. R. Civ. P. 9(b); see *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995) (KCPA allegations are subject to Rule 9(b)).

Rule 9(b) states "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  "Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be simple concise and direct."  *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations and citations omitted).  To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Id.*  "In other words, the plaintiff must set out the who, what, where, and when of the alleged fraud."  *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201,

4

1203 (D. Kan. 2001) (internal citations omitted).

In the case *sub judice*, Plaintiff alleges Vatterott and its representatives made misrepresentations about: 1) the completeness of the courses of study; 2) the qualifications and competence of the faculty; 3) the materials and equipment provided by Defendant; 4) Vatterott's accreditations for the courses of study; 5) Vatterott's job placement rates; and 6) the type and level of skills Plaintiffs' would receive upon completion of the courses of study.

Defendant argues Plaintiffs' allegations regarding the character of the misrepresentations are insufficient.  The Court finds the case in *Plastic Packaging* to be instructive.

In *Plastic Packaging*, the plaintiff alleged defendant committed fraud by intentionally misrepresenting the quality of the inks it sold to plaintiff.  Plaintiff alleged that blocking is a problem with printing on plastic.  Defendant allegedly represented that its inks would not cause blocking. When blocking did occur, defendant stated the blocking was caused by plaintiff's manufacturing process and not the ink itself.  Plaintiff further alleged that on one occasion defendant changed the label on a container of ink to deceive plaintiff.  The court found these allegations to satisfy the 'what' requirement of the fraud.

The Court finds Plaintiffs' allegations to be insufficient to meet the pleading requirements. In *Plastic Packaging*, the plaintiff identified the subject of the misrepresentation (ink) and the specific  misrepresentation about the subject (the ink does not cause blocking).  Unlike *Plastic Packaging*, Plaintiffs only identify the subject of the misrepresentation without specifically identifying what false representation was made about the subject.  See *U.S. ex rel. Smith v. The Boeing Co.*, 2006 WL 542851 (D. Kan. 2006) (complaint did not meet heightened pleading requirements of 9(b) despite identifying 32 aircraft because blanket allegations of false claims and documents connected to those aircraft were too vague).  Defendant has no idea what specific

representation was made about job placement rates, accreditations, teacher qualifications, skills necessary to obtain entry level employment, or materials to be provided.

Plaintiff argues its allegations are analogous to the allegations accepted by the court in *In re Universal Service Fund Telephone Billing Practices Litigation,* 300 F. Supp. 2d 1107 (D. Kan. 2003). In that case, the plaintiffs alleged, "Spring misrepresented the USF surcharge as a legally required 100% 'pass-through- charge on its invoices by designating it as a tax or regulatory charge." *Id*. at 1150.

The Court disagrees. *Sprint* identified the subject of the misrepresentation - the USF surcharge - as well as making a specific allegation about the content of the misrepresentation - the surcharge was designated as a legally required tax or regulatory fee. While Plaintiffs have identified the subject of the misrepresentation, they fail to make any specific allegation about the content of the misrepresentation. Unlike *Sprint*, Plaintiffs have failed to state specifically what about the courses, accreditations, qualifications, or materials was misrepresented to them.

Plaintiffs complaint alleging the 'when' aspect of the fraud is also deficient. Plaintiffs state the misleading statements occurred before and during their enrollments. This is not a particular statement as it is impossible to tell if misrepresentations occurred days or years before enrollment. As a result, Defendant has no notice of how far back in time these misleading statements were made. See *Sunbird Air Services, Inc. v. Beech Aircraft Corp.*, 789 F. Supp. 364, 366 (D. Kan. 1992) (the requirement of greater specificity is to give defendants notice of the conduct complained of). Furthermore, allegations of misrepresentations while enrolled are also impermissibly broad. The various Plaintiffs were enrolled at Vatterott for 12-18 months some beginning as early as June 2003 and as recent as January 2006. This is too broad ranging a time period to satisfy Rule 9(b)'s

6

requirements.[1]  See *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000) (finding a complaint alleging that misrepresentations were made during a multi-year timespan was insufficient to satisfy Rule 9(b)).

Plaintiffs' complaint also fails to adequately allege the place of the fraud. See *Koch,* 203 F.3d at 1237 (finding a complaint failing to mention at all the location where the misrepresentations were made was insufficient to satisfy Rule 9(b)); *Shaffer v. Eden*, 209 F.R.D. 460, 463 (D. Kan. 2002) (allegations that misrepresentations were made in employees' meetings were insufficient to disclose the place at which such meetings were held).  There is absolutely no allegation about the location of the verbal misrepresentations.  (Doc. 12 ¶ 25).  Furthermore, the aspect of the complaint alleging written misrepresentations delivered through the mail does not sufficiently state where the misrepresentations were made.  The Defendant is not on notice if these misrepresentations were made on brochures, personalized letters, bills, e-mails, or any of the other many forms of written communication.  See *Sprint*, 300 F. Supp. 2d at 1150 (complaint adequately pled misrepresentation by stating it occurred on the invoices); *Schwartz*, 124 F.3d at 1252 (complaint specifically identified documents, press releases and other communications which contained false statements).

Finally, the complaint does not adequately state who made the representations.  The complaint alleges the misrepresentations were made by "Vatterott agents and employees of Vatterott, including but not limited to admissions representatives, financial aid representatives, career services representatives, and course instructors."  (Doc. 12  ¶ 25).  This language includes virtually anyone associated with Vatterott.  Words like "including but not limited to" is hardly that which identifies specific individuals.  Furthermore, while Plaintiffs have identified the types of

---

[1] One plaintiff, Tiana Kennedy has no enrollment dates alleged.  (Doc. 12 ¶ 17).

employees who made misrepresentations (ie. personnel working in admissions, career services, and financial aid), they do not identify who, within these broad classes of employees, made misrepresentations.  See *Trussell v. United Underwriters, Limited*, 228 F. Supp. 757, 774 (D. Colo 1964) (Rule 9(b)'s requires identification of particular individuals with whom plaintiff dealt and their misrepresentations).

The Court finds that Plaintiffs' fraud and KCPA claims do not meet the particularity requirements of Rule 9(b).  "[A]llowing non-particular fraud claims to proceed to discovery defeats Rule 9(b)'s purposes of bringing an early end to frivolous claims which bring reputational damage." *Plastic Packaging,* 136 F. Supp. 2d at 1204.  The Court finds it possible that Plaintiffs could plead facts that might cure this deficiency.  The Court exercises its discretion in Rule 15(a) to grant Plaintiffs leave to amend the complaint to conform to the pleading requirements of Rule 9(b).  Fed. R. Civ. P. 15(a).  Plaintiffs have up until and including March 8, 2007 to file an amended pleading.

### III.  Rule 12(b)(6).

"A motion to dismiss is appropriate when the plaintiff can prove no set of facts in support of the claims that would entitle plaintiff to relief."  *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).  Furthermore, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party."  *Sutton,* 173 F.3d at 1236.

Generally a Court does not look beyond the face of a complaint when analyzing a Rule 12(b)(6) motion.  However, a court may consider a document, without converting the motion into one for summary judgment, if the complaint refers to this document and it is central to the plaintiff's claim.  *Macarthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2001).  Plaintiffs have submitted copies of the Enrollment Agreement, which are an indispensable part of the breach of contract claims.

A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state.  *Missouri P.R. Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 n1 (10th Cir. 1988).  "For purposes of contract construction, Kansas follows the theory of lex loci contractus – the place of the making of the contract controls.  Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls."  *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141, 1145 (D. Kan. 1999).  "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done."  *Smith v. McBride & Dehmer Constr. Co.*, 216 Kan. 76, 79, 530 P.2d 1222, 1225 (1975).  The parties do not provide any facts showing where the contract was formed; however, both parties use Kansas law in their arguments and the Court will use Kansas law to resolve this motion.  However, if there is no controlling state law, the Court must "determine how the case would be decided if presented to the Supreme Court of [Kansas]."  *Ross v. Creighton University*, 957 F.2d 410, 413 (7th Cir. 1992) (citing *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967)); see *Whitney v. Board of Educ of Grand County*, 292 F.3d 1280, 1287 (10th Cir. 2002).

Defendants argue that Plaintiffs' claims should be dismissed because they implicate the

9

same public policy concerns as the rejected educational malpractice theory of liability.  See *Finstad v. Washburn University of Topeka,* 252 Kan. 465, 845 P.2d 685 (1993).  Plaintiffs argue dismissal is not warranted because: 1) unlike *Finstad*, their claim is for breach of contract, not educational malpractice; 2) public policy concerns for educational malpractice are not implicated here; and 3) the allegations of breach of contract are not too general.[2]

In *Finstad,* students alleged educational malpractice and violations of the KCPA.  *Id*. at 465; Kan. Stat. Ann. 50-623 et. seq.  The Kansas Supreme Court (KSC) gave the following public policy reasons for not recognizing a tort action for educational malpractice: "(1) a lack of measurable standard of care; (2) inherent uncertainties as to the cause and nature of damages; (3) the potential for a flood of litigation; and (4) the courts' overseeing the day-to-day operation of the schools."  *Id*. at 477.  However, the KSC has not directly addressed whether a breach of contract claim implicating the same policy concerns would also be dismissed.

Other jurisdictions have recognized that characterization of causes of action as something other than educational malpractice does not automatically ensure their survival.  "[S]everal courts have noted, the policy concerns that preclude a cause of action for educational malpractice apply with equal force to bar a breach of contract claim attacking the general quality of an education."  *Ross v. Creighton University*, 957 F.2d 410, 416 (7th Cir. 1992).  "Where the essence of the complaint is that the school failed to provide an 'effective education,' it is irrelevant whether the claim is labeled as a tort action or breach of contract, 'since in either situation the court would be

---

[2] To avoid the possible rendering of an advisory opinion, the Court declines to analyze Plaintiffs' KCPA and fraud claims under Rule 12(b)(6) as those claims have already been found to be inadequate under Rule 9(b).  As a result, the analysis in this section is limited to Plaintiffs' breach of contract claim.

forced to enter into an inappropriate review of educational policy and procedures.'" *Alsides v. Brown Institute, Ltd.,* 592 N.W. 2d 468, 473 (Minn. App. 1999) (quoting *Cavaliere v. Duff's Business Institute*, 413 Pa. Sup. 357, 366, 605 A.2d 397 (1992)).

> There are, however, at least two situations wherein courts will entertain a cause of action for institutional breach of a contract for educational services. The first would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. The second would arise if the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program.

*Gupta v. New Britain General Hosp.,* 239 Conn. 574, 592-593, 687 A.2d 111 (1996); see *Ross,* 957 F.2d at 416 ("To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough. Instead he must point to an identifiable contractual promise that the defendant failed to honor"). The Court finds that Kansas would adhere to those cases which bar "any attempt to repackage an educational malpractice claim as a contract claim" because the policy concerns militating against educational malpractice also exist in contract claims which attack the general quality of education. *Id.*

Plaintiffs argue their allegations are not repackaged educational malpractice claims because the enrollment contract contains identifiable contractual promises. A promise to provide a specific number of hours or weeks of instruction is a contractual promise that can be enforced against an educational institution. See *Paladino v. Adelphi University*, 89 A.D. 2d 85, 92, 454 N.Y.S. 2d 868 (1982). As a result, to the extent Plaintiffs' breach of contract claim relies on these specific provisions in the enrollment agreement, Defendant's motion to dismiss is denied.

The Court will next focus on Plaintiffs' allegations and how they relate to the more general contract language. Plaintiffs allege the contract was breached in the following respects: 1) Vatterott failed to instruct Plaintiffs in material aspects of their respective courses of study; 2) Vatterott failed

to provide complete programs and courses of study; 3) Vatterott failed to provide competent instructors; and 4) Vatterott failed to provide equipment, laboratories, classrooms and other facilities necessary for teaching and learning Plaintiffs' courses of study.  (Doc. 12 ¶ 48).

Plaintiffs argue their allegations are specifically related to the promises made by Vatterott in the enrollment agreement.  Plaintiffs cite *Cencor, Inc. v. Tolman,* 868 P.2d 396, 398-399 (1994) for support.

In *Cencor,* the plaintiffs asserted defendant breached its promises to provide modern equipment in good working condition, qualified instructors, computer training for all students, and specialized training at no extra cost.  *Id*. at 399.  *Cencor* rejected "contract claims that in fact attack the general quality of educational experiences" because "they raise questions concerning the reasonableness of conduct by educational institutions in providing particular educational services." *Id.*  However, it found Plaintiff's allegations to be specific enough to be actionable in contract.  *Id*. at 400.

*Cencor* is distinguishable because the contractual language in this case is not detailed or specific. Instead of promising a specific quality of computers and instructors, or cost-free training, Vatterott promised to provide the "instructors, equipment, laboratories, classrooms and other facilities necessary for teaching" at a rate consistent with its tuition.  (Pl. Ex. A).  Consequently, Plaintiffs allegations based on this general contract language are more analogous to claims attacking the overall reasonableness of an institution's decisions in providing educational services.

Without specific and detailed contractual promises, Plaintiffs' allegations implicate *Finstad's* concern of having courts oversee the general operations of educational institutions.  See *Alsides*, 592 N.W. 2d at 473 (breach of contract claims against educational institutions may not be brought if the

12

promises to be enforced are general and would require an inquiry into the nuances of educational processes and theories).  Indeed, an inquiry into these allegations would require the trier of fact to weigh the qualifications of the instructors and the methods by which they taught; to review of the number and types of classes in the courses of study; to determine what is and is not material in a course of study; to determine the type of equipment, laboratories, classrooms and other facilities necessary to teach students given Vatterott's tuition rate.  This is the type of comprehensive review courts have sought to avoid, as it replaces the judgment of educators for those of judges and juries. See *Paladino*, 89 A.D. 2d at 90 ("The courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods.").

Plaintiffs' allegations also implicate *Finstad's* concern relating to uncertainties with causation and damages.  Plaintiffs assert they "were denied employment or were offered positions at levels lower than their education otherwise would have merited had they received the type and quality of instruction promised and represented by Vatterott and its Representatives."  (Doc. 12 ¶ 31).

An inability to obtain suitable employment is not necessarily the result of a poor education. The *Finstad* court noted that the efforts of an educational institution only go so far to ensure the success of its students.  *Finstad,* 252 Kan. at 475 .  "Education is an intensely collaborative process, requiring interaction of student with teacher.  A good student can learn from a poor teacher; a poor student can close his mind to a good teacher.  Without effort by a student, he cannot be educated...Both the process and the result are subjective, and proof or disproof extremely difficult." *Id.* (quoting *Ross*, 740 F. Supp. at 1328).  Another court explained, "failure...could stem from a variety of factors including the student's physical, neurological, emotional, cultural and

13

environmental background, as well as the actual [educational] system itself." *Cavaliere*, 605 A.2d at 400 (quoting *Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601, 604, 493 A.2d 641 (1985)).

The fact that Plaintiffs were unsuccessful in obtaining their desired employment following the completion of their courses could be linked to a variety of factors, exclusive of the quality of education. However, an inquiry into these factors is an inappropriate judicial undertaking. It would be an exceedingly difficult task to determine with any degree of certainty why the aggrieved plaintiffs each failed to acquire the necessary skills to be successful in the job market.

As a result of the public policy concerns elucidated by the KSC in *Finstad*, the Court dismisses those breach of contract claims that are not based on the specific hours or weeks of instruction promised in the enrollment agreement.

It is ORDERED that Vatterott's Motions to Dismiss (Doc. 9, 13) be GRANTED in part and DENIED in part. Plaintiffs have until March 8, 2007 to file an amended pleading which conforms to the requirements of Rule 9(b).

SO ORDERED this 9th day of February 2007.


 s/ Wesley E. Brown

Wesley E. Brown, U.S. Senior District Judge

14