HINKLE ELKOURI LAW FIRM L.L.C.
2000 Epic Center
301 North Main
Wichita, Kansas  67202
Telephone: (316) 267-2000
Facsimile:  (316) 264-1556

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARL  JAMIESON, KENNETH LYNCH,
AARON BORST, NATHAN COOK,
RHONDAS FOWLER, JAMES HADLEY,
BRYAN HUDSON, TIANA KENNEDY,
KENNETH MILLER, SHANNON POUND,
BIBI SANANIKONE, SCOTT A. WARD,
CLIFF ZOLLMAN, and all other similarly
situated current and former students,
            *Plaintiffs,*

vs.

VATTEROTT EDUCATIONAL CENTER,
INC., d/b/a VATTEROTT COLLEGE,
            *Defendant.*

Civil Action
Case No. 06-CV-1103-WEB-DWB

## ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION

COMES NOW, defendant Vatterott Educational Center, Inc. d/b/a Vatterott College, (hereinafter "Vatterott") by and through its counsel, Hinkle Elkouri Law Firm L.L.C., for its Answer to Plaintiffs' Second Amended Complaint – Class Action states and alleges as follows:

Plaintiffs' Second Amended Complaint – Class Action fails to state any claim against Vatterott upon which relief can be granted.

The averments of Plaintiffs' Second Amended Complaint – Class Action are repeated in the same numbered paragraphs as they appear in the Second Amended Complaint – Class Action.

1.    Plaintiffs are residents of the state of Kansas.

**ANSWER:    It is without information sufficient to form a belief as to the truth of the averments in paragraph numbered 1, and therefore, denies the same.**

2.    Defendant, Vatterott Educational Centers, Inc., (hereinafter referred to as "Vatterott"), is a for-profit corporation organized and operating under the laws of the State of Missouri, with its principal place of business at 10257 St. Charles Rock Road, St. Ann, MO 63074.  Vatterott is licensed to transact business in the State of Kansas, and in fact transacts business in Wichita, Sedgwick County, Kansas, as "Vatterott College."

**ANSWER:    Admitted.**

3.    Defendant may be served with process through its resident agent, Diana Otis, 3639 N. Comotara, Wichita, Kansas 67226.

**ANSWER:    Admitted.**

4.    This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), and venue is proper in this forum pursuant to 28 U.S.C. § 1391(a)(2).

**ANSWER:    It denies all averments in paragraph numbered 4.**

5.    No administrative remedies or other prerequisites to filing suit exist that prevent Plaintiffs from filing suit at this time, and suit has been timely filed within all applicable statutes of limitation.

**ANSWER:    It admits there are no administrative remedies or other prerequisites to filing suit that prevent Plaintiffs from filing suit at this time, but denies all other averments of paragraph numbered 5.**

IN THE UNTED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 3 OF 45

**Statement of Facts**

6.    Defendant Vatterott is an educational institution providing occupational training in various fields, including computer programming, electrical mechanic, and medical office assistant courses of study.

**ANSWER:    Admitted.**

**AARON BORST**

**Facts Applicable to Fraud, KCPA, and Punitive Damages Claims**

7.    On May 1, 2003, Plaintiff Aaron Borst made an on-site visit to Vatterott's Wichita, Kansas campus.  There he met with Vatterott admissions representatives Linda McClure and Darlene Smith, and Brenda Boone, Vatterott's Financial Assistance Administrator. He was informed that if he enrolled in the computer programming course of study he would receive entry-level training in computer programming and editing.  He was informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.  He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree.  He was informed that the education he would receive at Vatterott was equivalent to 60 credit hours of college instruction.  He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:    It denies all averments in paragraph numbered 7.**

8.      Borst received the same information at the New Student Orientation, which occurred August 7, 2003, at 9:00 a.m. at Vatterott's Wichita campus.  The statements were made by previously mentioned admissions representatives present at the orientation, including Blake Reynolds.

**ANSWER:     It denies all averments in paragraph numbered 8.**

9.      In reliance upon the statements made to him, Borst executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Borst executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 9.**

10.     Plaintiff Aaron Borst was enrolled in Vatterott's computer programming course of study from August 11, 2003 until completion on September 30, 2004.

**ANSWER:     Admitted.**

11.     Soon after enrolling in an undated form letter from Vatterott representatives Linda McClure and Darlene Smith, Borst was again informed that he would receive assistance in job placement, including employment opportunities, resume writing, and interviewing skills.

**ANSWER:     It admits that it offers assistance to students with respect to resume writing, job placement, and interviewing skills, but denies all remaining averments in paragraph numbered 11.**

12.     Borst never received training in the C++ programming language.

**ANSWER:     It denies all averments in paragraph numbered 12.**

13.     Borst received only partial training in Java because the instructor failed to complete the course of study in that programming language.

**ANSWER:     It denies all averments in paragraph numbered 13.**

14.     After completing the computer programming course of study, Borst learned that the versions of the programs he had been taught were out-dated and no longer used in the computer programming industry.

**ANSWER:     It denies all averments in paragraph numbered 14.**

15.     Upon information and belief, the course credits Borst earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:     It denies all averments in paragraph numbered 15.**

16.     Upon graduation Vatterott refused to provide any job placement assistance to Borst.

**ANSWER:     It denies all averments in paragraph numbered 16.**

17.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 17.**

## Facts Applicable to Breach of Contract Claim

18.     In August 2003, Borst executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits Borst executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 18.**

19.     In the Enrollment Agreement with Borst, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:     It denies all averments in paragraph numbered 19.**

20.     For ten weeks of the course of study Vatterott provided no instructor, and Borst therefore did not receive instruction during those times.

**ANSWER:     It denies all averments in paragraph numbered 20.**

## NATHAN COOK

## Facts Applicable to Fraud, KCPA, and Punitive Damages

21.     In early December 2003, Plaintiff Nathan Cook made an on-site visit to Vatterott's Wichita, Kansas campus.  There he met with Vatterott admissions representatives Linda McClure and Darlene Smith.  He was informed that if he enrolled in the computer programming course of study he would receive entry-level training in computer programming and editing.  He was informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, C++ programming languages.  He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree.  He was informed that the education he would receive at Vatterott was

equivalent to 60 credit hours of college instruction.  He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:**    **It denies all averments in paragraph numbered 21.**

22.    In reliance upon the statements made to him, Cook executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:**    **It admits that Cook executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 22.**

23.    Plaintiff Nathan Cook was enrolled in Vatterott's computer programming course of study from December 29, 2003 until completion on February 17, 2005.

**ANSWER:**    **Admitted.**

24.    Upon information and belief, the versions of the programs taught in Cook's classes were out-dated and no longer used in the computer programming industry.

**ANSWER:**    **It denies all averments in paragraph numbered 24.**

25.    Upon information and belief, the course credits Cook earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:**    **It denies all averments in paragraph numbered 25.**

26.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 26.**

**Facts Applicable to Breach of Contract Claim**

27.     In  December 2003 Cook executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Cook executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 27.**

28.     In the Enrollment Agreement with Cook, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:     It denies all averments in paragraph numbered 28.**

29.     For ten weeks of the course of study Vatterott provided no instructor, and Cook therefore did not receive instruction during those times.

**ANSWER:     It denies all averments in paragraph numbered 29.**

**JAMES HADLEY**

**Facts Applicable to Fraud, KCPA, and Punitive Damages Claims**

30.     In early August 2003, Plaintiff James Hadley made an on-site visit to Vatterott's Wichita, Kansas campus.  He met with Vatterott admissions representatives Linda McClure and Darlene Smith and was informed that if he enrolled in the computer programming course of study he would receive entry-level training in computer programming and editing.  He was

informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.  He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree. He was informed that the education he would receive at Vatterott was equivalent to 60 credit hours of college instruction.  He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:     It denies all averments in paragraph numbered 30.**

31.     Hadley received the same information at the New Student Orientation, which occurred August 7, 2003, at 9:00 a.m. at Vatterott's Wichita campus.  The statements were made by admissions representatives present at the orientation, including Blake Reynolds.

**ANSWER:     It denies all averments in paragraph numbered 31.**

32.     In reliance upon the statements made to him, Hadley executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Hadley executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 32.**

33.     Plaintiff James Hadley was enrolled in Vatterott's computer programming course of study from August 11, 2003 until completion on September 30, 2004.

**ANSWER:     Admitted.**

34.     Hadley never received training in C++ programming language.

**ANSWER:     It denies all averments in paragraph numbered 34.**

35.     Hadley received only partial training in Java because the instructor failed to complete the course of study in that programming language.

**ANSWER:     It denies all averments in paragraph numbered 35.**

36.     After completing the computer programming course of study, Hadley learned that the versions of the programs he had been taught were out-dated and no longer used in the computer programming industry.

**ANSWER:     It denies all averments in paragraph numbered 36.**

37.     Upon information and belief, the course credits Hadley earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:     It denies all averments in paragraph numbered 37.**

38.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 38.**

**Facts Applicable to Breach of Contract Claim**

39.     In August 2003 Hadley executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits Hadley executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 39.**

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 11 OF 45

40.     In the Enrollment Agreement with Hadley, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:     It denies all averments in paragraph numbered 40.**

41.     For ten weeks of the course of study Vatterott provided no instructor, and Hadley therefore did not receive instruction during those times.

**ANSWER:     It denies all averments in paragraph numbered 41.**

**CARL JAMIESON**

**Facts Applicable to Fraud, KCPA, and Punitive Damages Claims**

42.     In early October 2003, Plaintiff Carl Jamieson made an on-site visit to Vatterott's Wichita, Kansas campus.  He met with Vatterott representatives Deborah Ann Mancuso, Linda McClure, and Darlene Smith.  He was informed that if he enrolled in the computer programming course of study he would receive entry-level training in computer programming and editing.  He was informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.  He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree.  He was informed that the education he would receive at Vatterott was equivalent to 60 credit hours of college instruction.  He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:     It denies all averments in paragraph numbered 42.**

43.    In reliance upon the statements made to him, Jamieson executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:    It admits that Jamieson executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 43.**

44.    Plaintiff Carl Jamieson was enrolled in Vatterott's computer programming course of study from October 20, 2003 until completion on December 9, 2004.

**ANSWER:    Admitted.**

45.    Upon information and belief, the versions of the programs taught in the computer programming course of study were out-dated and no longer used in the computer programming industry.

**ANSWER:    It denies all averments in paragraph numbered 45.**

46.    Upon information and belief, the course credits Jamieson earned while at Vatterott were and are not transferable to other colleges and universities.

**ANSWER:    It denies all averments in paragraph numbered 46.**

47.    Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:    It denies all averments in paragraph numbered 47.**

## Facts Applicable to Breach of Contract Claim

48.    In October 2003 Jamieson executed an Enrollment Agreement with Vatterott for the 60-weeks computer programming course of study at a cost of approximately $20,000.

**ANSWER:   It admits that Jamieson executed an Enrollment Agreement with Vatterott for the 60-weeks computer programming course of study, but denies all remaining averments in paragraph numbered 48.**

49.    In the Enrollment Agreement with Jamieson, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:    It denies all averments in paragraph numbered 49.**

50.    Upon information and belief, Vatterott did not provide the hours and weeks of instruction promised in the Enrollment agreement with Jamieson.

**ANSWER:    It denies all averments in paragraph numbered 50.**

## TIANA KENNEDY

### Facts Applicable to Fraud, KCPA, and Punitive Damages Claims

51.    In early June 2003, Plaintiff Tiana Kennedy made an on-site visit to Vatterott's Wichita, Kansas campus.   There she met with Vatterott admissions representative Linda McClure and Darlene Smith.   She was informed that if she enrolled in the computer programming course of study she would receive entry-level training in computer programming and editing.   She was informed that she would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.   She was informed she could transfer her credits from Vatterott to other colleges and universities if she

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 14 OF 45

later pursued a bachelor's degree. She was informed that the education she would receive at Vatterott was equivalent to 60 credit hours of college instruction. She was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates. Furthermore, she was advised that Vatterott would provide assistance in job placement.

**ANSWER:** **It denies all averments in paragraph numbered 51.**

52.    In reliance upon the statements made to her, Kennedy executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:** **It admits that Kennedy executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 52.**

53.    Plaintiff Tiana Kennedy was enrolled in Vatterott's computer programming course of study from June 2, 2003 until completion on July 22, 2004.

**ANSWER:** **Admitted.**

54.    Upon information and belief, the versions of the programs taught in Kennedy's classes were out-dated and no longer used in the computer programming industry.

**ANSWER:** **It denies all averments in paragraph numbered 54.**

55.    Upon information and belief, the course credits Kennedy earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:** **It denies all averments in paragraph numbered 55.**

IN THE UNTED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 15 OF 45

56.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 56.**

**Facts Applicable to Brach of Contract Claim**

57.     In June 2003 Kennedy executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Kennedy executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 57.**

58.     In the Enrollment Agreement with Kennedy, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:     It denies all averments in paragraph numbered 58.**

59.     Upon information and belief, Vatterott did not provide the hours and weeks of instruction promised in the Enrollment agreement with Kennedy.

**ANSWER:     It denies all averments in paragraph numbered 59.**

**KENNETH LYNCH**

**Facts Applicable to Fraud, KCPA, and Punitive Damages Claims**

60.     In early August 2003, Plaintiff Kenneth Lynch made an on-site visit to Vatterott's Wichita, Kansas campus.  He met with Vatterott representatives Linda McClure, Darlene Smith, and Deb Schrader.  He was informed that if he enrolled in the computer programming course of

study he would receive and entry-level training in computer programming and editing. He was informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages. He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree, and that the computer programming course of study was the equivalent of an associate's degree. He was informed that Vatterott would provide job placement assistance. He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airlines companies, and was informed that those employers actively and regularly sought Vatterott graduates. Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:** **It denies all averments in paragraph numbered 60.**

61. Lynch received the same information at the New Student Orientation, which occurred August 7, 2003, at 9:00 a.m. at Vatterott's Wichita campus. The statements were made by admissions representatives present at the orientation, including Blake Reynolds.

**ANSWER:** **It denies all averments in paragraph numbered 61.**

62. In reliance upon the statements made to him, Lynch executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:** **It admits that Lynch executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 62.**

63.     Soon after enrolling, in an undated form letter form Vatterott representatives Linda McClure and Darlene Smith, Lynch was informed that he would receive assistance in job placement, including employment opportunities, resume writing, and interviewing skills.

**ANSWER:    It admits that it offers assistance to students with respect to resume writing, job placement, and interviewing skills, but denies all remaining averments in paragraph numbered 63.**

64.     Plaintiff Lynch was enrolled in Vatterott's computer programming course of study from August 11, 2003 until completion on September 30, 2004.

**ANSWER:    Admitted.**

65.     Lynch never received training in the C++ programming language.

**ANSWER:    It denies all averments in paragraph numbered 65.**

66.     Lynch received only partial training in Java because the instructor failed to complete the course of study in that programming language.

**ANSWER:    It denies all averments in paragraph numbered 66.**

67.     After completing the computer programming course of study, Lynch learned that the versions of the programs he had been taught were out-dated and no longer used in the computer programming industry.

**ANSWER:    It denies all averments in paragraph numbered 67.**

68.     After completing the course of study, Vatterott refused to provide Lynch with any job placement assistance.

**ANSWER:    It denies all averments in paragraph numbered 68.**

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 18 OF 45

69.     After completing the computer programming course of study and receiving no job placement assistance, Lynch enrolled at Southwestern College in Winfield, Kansas to pursue a bachelor's degree.  Lynch was unable to transfer the credits he had earned at Vatterott and has had to take additional classes at Southwestern College to earn the credits he had been informed would transfer.

**ANSWER:     It denies all averments in paragraph numbered 69.**

70.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 70.**

**Facts Applicable to Breach of Contract Claim**

71.     In August 2003 Lynch executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits Lynch executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 71.**

72.     In the Enrollment Agreement with Lynch, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:     It denies all averments in paragraph numbered 72.**

73.     For ten weeks of the course of study Vatterott provided no instructor, and Lynch therefore did not receive instruction during those times.

**ANSWER:     It denies all averments in paragraph numbered 73.**

## KENNETH MILLER

### Facts Applicable to Fraud, KCPA, and Punitive Damages Claim

74.     In early December 2003, Plaintiff Kenneth Miller made an on-site visit to Vatterott's Wichita, Kansas campus.  He met with Vatterott admissions representatives Linda McClure and Darlene Smith.  He was informed that if he enrolled in the computer programming course of study he would receive and entry-level training in computer programming and editing. He was informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.  He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree.  He was informed that the education he would receive at Vatterott was equivalent to 60 credit hours of college instruction.  He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:     It denies all averments in paragraph numbered 74.**

75.     In reliance upon the statement made to him, Miller executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Miller executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 75.**

76.    Plaintiff Kenneth Miller was enrolled in Vatterott's computer programming course of study from December 29, 2003 until completion on February 17, 2005.

**ANSWER:    Admitted.**

77.    Upon information and belief, the versions of the programs taught in Miller's classes were out-dated and no longer used in the computer programming industry.

**ANSWER:    It denies all averments in paragraph numbered 77.**

78.    Upon information and belief, the course credits Miller earned while at Vatterott were and are not transferable to other colleges and universities.

**ANSWER:    It denies all averments in paragraph numbered 78.**

79.    Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:    It denies all averments in paragraph numbered 79.**

**Facts Applicable to Breach of Contract Claim**

80.    In December 2003 Miller executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:    It admits Miller executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 80.**

81.    In the Enrollment Agreement with Miller, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:    It denies all averments in paragraph numbered 81.**

82.     For ten weeks of the course of study Vatterott provided no instructor, and Miller therefore did not receive instruction during those times.

**ANSWER:     It denies all averments in paragraph numbered 82.**

### SHANNON POUND

### Facts Applicable to Fraud, KCPA, and Punitive Damages Claims

83.     In early December 2003, Plaintiff Shannon Pound made an on-site visit to Vatterott's Wichita, Kansas campus.  She met with Vatterott admissions representatives Linda McClure and Darlene Smith.  She was informed that if she enrolled in the computer programming course of study she would receive entry-level training in computer programming and editing.  She was informed that she would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.  She was informed she could transfer her credits from Vatterott to other colleges and universities if she later pursued a bachelor's degree.  She was informed that the education she would receive at Vatterott was equivalent to 60 credit hours of college instruction.  She was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, she was advised that Vatterott would provide assistance in job placement.

**ANSWER:     It denies all averments in paragraph numbered 83.**

84.     In reliance upon the statements made to her, Pound executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:    It admits that Pound executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 84.**

85.    Plaintiff Pound was enrolled in Vatterott's computer programming course of study from December 29, 2003 until completion on February 17, 2005.

**ANSWER:    Admitted.**

86.    Upon information and belief, the versions of the programs taught in Pound's classes were out-dated and no longer used in the computer programming industry.

**ANSWER:    It denies all averments in paragraph numbered 86.**

87.    Upon information and belief, the course credits Pound earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:    It denies all averments in paragraph numbered 87.**

88.    Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:    It denies all averments in paragraph numbered 88.**

**Facts Applicable to Breach of Contract Claim**

89.    In December 2003 Pound executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:    It admits Pound executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 89.**

90.     In the Enrollment Agreement with Pound, Vatterott promised to provide 60 weeks of instruction with classes meeting through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:     It denies all averments in paragraph numbered 90.**

91.     For ten weeks of the course of study Vatterott provided no instructor, and Pound therefore did not receive instruction during those times.

**ANSWER:     It denies all averments in paragraph numbered 91.**

**BIBI SANANIKONE**

92.     In early December 2003, plaintiff Bibi Sananikone made an on-site visit to Vatterott's Wichita, Kansas campus.  She met with Vatterott admissions representatives Linda McClure and Darlene Smith.  She was informed that if she enrolled in the computer programming course of study she would receive entry-level training in computer programming and editing.  She was informed that she would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages.  She was informed she could transfer her credits from Vatterott to other college and universities if she later pursued a bachelor's degree.  She was informed that the education she would receive at Vatterott was equivalent to 60 credit hours of college instruction. She was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers actively and regularly sought Vatterott graduates.  Furthermore, she was advised that Vatterott would provide assistance in job placement.

**ANSWER:     It denies all averments in paragraph numbered 92.**

93.     In reliance upon the statements made to her, Sananikone executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Sananikone executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 93.**

94.     Plaintiff Sananikone was enrolled in Vatterott's computer programming course of study from December 29, 2003 until completion on February 17, 2005.

**ANSWER:     Admitted.**

95.     Upon information and belief, the versions of the programs taught in Sananikone's classes were out-dated and no longer used in the computer programming industry.

**ANSWER:     It denies all averments in paragraph numbered 95.**

96.     Upon information and belief, the course credits Sananikone earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:     It denies all averments in paragraph numbered 96.**

97.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 97.**

**Facts Applicable to Breach of Contract Claim**

98.     In December 2003 Sananikone executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:**   **It admits that Sananikone executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 98.**

99.   In the Enrollment Agreement with Sananikone, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:**   **It denies all averments in paragraph numbered 99.**

100.   For ten weeks of the course of study Vatterott provided no instructor, and Sananikone therefore did not receive instruction during those times.

**ANSWER:**   **It denies all averments in paragraph numbered 100.**

## SCOTT A. WARD

### Facts Applicable to Fraud, KCPA, and Punitive Damages Claims

101.   In early October 2003, Plaintiff Scott A. Ward made an on-site visit to Vatterott's Wichita, Kansas campus. He met with Vatterott admissions representatives Linda McClure and Darlene Smith. He was informed that if he enrolled in the computer programming course of study he would receive entry-level training in computer programming and editing. He was informed that he would receive training in the current versions of Microsoft Office Suite, Visual Basic, SQL, Java, and C++ programming languages. He was informed he could transfer his credits from Vatterott to other colleges and universities if he later pursued a bachelor's degree. He was informed that the education he would receive at Vatterott was equivalent to 60 credit hours of college instruction. He was specifically informed that Vatterott had connections with Koch Industries, Coleman, and many airline companies, and was informed that those employers

actively and regularly sought Vatterott graduates.   Furthermore, he was advised that Vatterott would provide assistance in job placement.

**ANSWER:     It denies all averments in paragraph numbered 101.**

102.     In reliance upon the statements made to him, on October 16, 2003 Ward executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Ward executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 102.**

103.     Plaintiff Scott A. Ward was enrolled in Vatterott's computer programming course of study from October 20, 2003 until completion on December 9, 2004.

**ANSWER:     Admitted.**

104.     Upon information and belief, the versions of the programs taught in Ward's classes were out-dated and no longer used in the computer programming industry.

**ANSWER:     It denies all averments in paragraph numbered 104.**

105.     Upon information and belief, the course credits Ward earned while at Vatterott were and are not transferable to other colleges or universities.

**ANSWER:     It denies all averments in paragraph numbered 105.**

106.     Upon information and belief, Vatterott did not have the employment connections with Koch Industries, Coleman, and airline companies that had been represented, and those companies did not seek Vatterott graduates for open positions.

**ANSWER:     It denies all averments in paragraph numbered 106.**

## Facts Applicable to Breach of Contract Claim

107.    On October 16, 2003 Ward executed an Enrollment Agreement with Vatterott for the 60-week computer programming course of study at a cost of approximately $20,000.

**ANSWER:    It admits that Ward executed an Enrollment Agreement with Vatterott for a 60-week computer programming course of study, but denies all remaining averments in paragraph numbered 107.**

108.    In the Enrollment Agreement with Ward, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 8:00 a.m. to 12:30 p.m.

**ANSWER:    It denies all averments in paragraph numbered 108.**

109.    Upon information and belief, Vatterott did not provide the hours and weeks of instruction promised in the Enrollment Agreement with Ward.

**ANSWER:    It denies all averments in paragraph numbered 109.**

## BRYAN HUDSON

### Facts Applicable to Fraud, KCPA, and Punitive Damages Claims

110.    In September or October 2004, Plaintiff Bryan Hudson made an on-site visit to Vatterott's Wichita, Kansas campus.  He met with Vatterott representative Darlene Smith.  He informed Smith he wanted to become a commercial journeyman electrician and wanted hands-on training with motor controls, which he informed Smith was essential for becoming a commercial journeyman.  Smith informed Hudson he would receive hands-on experience with motor controls and would receive sufficient training to make application for and pass the commercial journeyman's exam.  Smith informed Hudson he could use his time at Vatterott toward fulfilling

the apprenticeship hours required for commercial journeymen.  Smith informed Hudson Vatterott could serve as Hudson's sponsor when he applied to take the commercial journeyman's exam.

**ANSWER:** **It denies all averments in paragraph numbered 110.**

111.    In reliance upon the statements made to him, Hudson executed an enrollment agreement with Vatterott for the 60-week electrical mechanic course of study at a cost of approximately $20,000.

**ANSWER:** **It admits Hudson executed an Enrollment Agreement with Vatterott for the 60-week electrical mechanic course of study, but denies all remaining averments in paragraph numbered 111.**

112.    Plaintiff Bryan Hudson was enrolled in Vatterott's electrical mechanic course of study from December 13, 2004 until completion on February 2, 2006.

**ANSWER:** **Admitted.**

113.    Hudson did not receive hands-on training with motor controls as part of the electrical mechanic course of study.

**ANSWER:** **It denies all averments in paragraph numbered 113.**

114.    Contrary to the statements of Vatterott representatives, Hudson was unable to use his time at Vatterott toward fulfilling the apprenticeship hours required for commercial journeymen.

**ANSWER:** **It denies all averments in paragraph numbered 114.**

115.    Contrary to the statements of Vatterott representatives, Hudson was unable to use Vatterott as his sponsor when he applied to take the commercial journeyman's exam.

**ANSWER:** **It denies all averments in paragraph numbered 115.**

## Facts Applicable to Breach of Contract Claim

116.    Between September and December 2004, Hudson executed an Enrollment Agreement with Vatterott for the 60-week electrical mechanic course of study at a cost of approximately $20,000.

**ANSWER:    It admits Hudson executed an Enrollment Agreement with Vatterott for a 60-week electrical mechanic course of study, but denies all remaining averments in paragraph numbered 116.**

117.    In the Enrollment Agreement with Hudson, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 6:00 p.m. to 10:30 p.m.

**ANSWER:    It denies all averments in paragraph numbered 117.**

118.    Hudson's instructors would regularly adjourn the classes by 8:00 p.m., and for two weeks of the course of study Vatterott provided no instructor, and Hudson therefore did not receive instruction during those times.

**ANSWER:    It denies all averments in paragraph numbered 118.**

## CLIFF ZOLLMAN

## Facts Applicable to Fraud, KCPA, and Punitive Damages Claims

119.    In January 2005 Plaintiff Cliff Zollman made an on-site visit to Vatterott's Wichita, Kansas campus.  He took a tour of the campus with Vatterott representative Holly Pernice and Vatterott instructor Kemp Smith.  He then met with Vatterott representative Allen Dykes, who told Zollman that 80 percent of the electrical mechanic curriculum was hands-on training, and 20 percent was classroom work.

**ANSWER:     It denies all averments in paragraph numbered 119.**

120.     In reliance upon the statement made to him, on February 11, 2005, Plaintiff Cliff Zollman executed an Enrollment Agreement with Vatterott for the 60-week electrical mechanic course of study at a cost of approximately $20,000.

**ANSWER:     It admits that Zollman executed an Enrollment Agreement with Vatterott for the 60-week electrical mechanic course of study, but denies all remaining averments in paragraph numbered 120.**

121.     Plaintiff Cliff Zollman was enrolled in Vatterott's electrical mechanic course of study from February 21, 2005 until completion on April 13, 2006.

**ANSWER:     Admitted.**

122.     Approximately three weeks after beginning the course of study, Zollman was dissatisfied with the laboratories and materials and met with Vatterott representative Allen Dykes to discuss withdrawing from the program and refunding his tuition.   Dykes told Zollman that Vatterott would be getting more materials and would be improving the laboratories.  In reliance on Dykes' statements, Zollman continued his studies and did not withdraw.  However, the additional materials and laboratory improvements Dykes had represented did not appear during Zollman's time at Vatterott.  As a result thereof, Zollman's refund options had been substantially diminished per the provisions of the Enrollment Agreement.

**ANSWER:     It denies all averments in paragraph numbered 122.**

123.     Upon information and belief, Zollman's courses involved approximately 15 to 20 percent hand-on time, not the 80 percent Dykes had represented.  Furthermore, he did not receive any training in motor controls and commercial electrical functions and tasks.

**ANSWER:**   **It denies all averments in paragraph numbered 123.**

**Facts Applicable to Breach of Contract Claims**

124.   On February 11, 2005, Plaintiff Cliff Zollman executed an Enrollment Agreement with Vatterott for the 60-week electrical mechanic course of study at a cost of approximately $20,000.

**ANSWER:**   **It admits that Zollman executed an Enrollment Agreement with Vatterott for a 60-week electrical mechanic course of study, but denies all remaining averments in paragraph numbered 124.**

125.   In the Enrollment Agreement with Zollman, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 6:00 p.m. to 10:30 p.m.

**ANSWER:**   **It denies all averments in paragraph numbered 125.**

126.   Zollman's instructors would regularly adjourn the classes by 8:00 p.m., and for two weeks of the course of study Vatterott provided no instructor, and Zollman therefore did not receive instruction during those times.

**ANSWER:**   **It denies all averments in paragraph numbered 126.**

**RHONDA FOWLER**

**Facts Applicable to Fraud, KCPA, and Punitive Damages Claims**

127.   In January 2003, Plaintiff Rhonda Fowler made an on-site visit to Vatterott's Wichita, Kansas campus.  She met with Vatterott admissions representative Avonna Mikel and Deborah Ann Mancuso regarding Vatterott's medical office assistant ("MOA") program.  Fowler was informed that as part of the MOA course of study she would receive all the certifications

related to the classes she took and the career field she would study.  The certifications were represented to include coding, transcription, cardiopulmonary resuscitation/CPR, and first aid. She was informed that the testing for the certifications would be given at Vatterott.  Fowler was expressly guaranteed by Mikel that when she graduated from Vatterott the starting pay in her field would be between $12.00 and $15.00 hour.

**ANSWER:**   **It denies all averments in paragraph numbered 127.**

128.    In reliance upon the statements made to her, Fowler executed an enrollment agreement with Vatterott for the 60-week medical office assistant course of study at a cost of approximately $18,500.

**ANSWER:**   **It admits that Hudson executed an Enrollment Agreement with Vatterott for the 60-week medical office assistant course of study, but denies all remaining averments in paragraph numbered 128.**

129.    Plaintiff Rhonda Fowler was enrolled in Vatterott's medical office assistant program from January 13, 2003 until completion in May 2004.

**ANSWER:**   **Admitted.**

130.    At various times during her course of study, Fowler was informed by her instructors, including Pam McNutt, Jeff Coomes, and Vicki Palmer, that she would receive the certifications represented previously by Mikel and Mancuso.  Those instructors also confirmed the rate of pay she had been guaranteed to receive.

**ANSWER:**   **It denies all averments in paragraph numbered 130.**

131.    After completing the course of study, Fowler voluntarily retook the coding class to further her education in that area.  While taking that class, Fowler learned from Vatterott

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 33 OF 45

representative Diana Otis that Vatterott did not have the certifications Fowler had been informed she would receive.  Otis told Fowler that Vatterott was working on obtaining those certifications.

**ANSWER:**    **It denies all averments in paragraph numbered 131.**

132.    When graduated in May 2004, Vatterott still did not have the certifications that Fowler had been promised would be available.

**ANSWER:**    **It denies all averments in paragraph numbered 132.**

133.    Fowler has since applied for numerous positions in insurance billing, coding, and medical transcription, but has been denied employment specifically because she did not have the certifications Vatterott had represented she would receive.  Fowler has had to obtain employment as a receptionist at a rate of pay lower than that promised by Vatterott.

**ANSWER:**    **It denies all averments in paragraph numbered 133.**

**Facts Applicable to Breach of Contract Claim**

134.    In January 2003, Fowler executed an enrollment agreement with Vatterott for the 60-week medical office assistant course of study at a cost of approximately $18,500.

**ANSWER:**    **It admits that Fowler executed an enrollment agreement with Vatterott for a 60-week medical office assistant course of study, but denies all remaining averments in paragraph numbered 134.**

135.    In the Enrollment Agreement with Fowler, Vatterott promised to provide 60 weeks of instruction with classes meeting Monday through Thursday from 6:00 p.m. to 10:30 p.m.

**ANSWER:**    **It denies all averments in paragraph numbered 135.**

136.    For the first four weeks of the course of study Vatterott provided no instructor, and Fowler therefore did not receive instruction during those times.

**ANSWER:    It denies all averments in paragraph numbered 136.**

## CLASS ACTION ALLEGATIONS

137.    Plaintiffs and all other similarly current and former students who were or are enrolled at Vatterott College request that the court certify three sub-classes of Plaintiffs as set forth below, pursuant to Fed. R. Civ. P. 23.   As former students of Vatterott, Plaintiffs are suitable class representatives who, in protecting their interests so common to the proposed class, will necessarily protect those individual interests of proposed class members.

**ANSWER:    It denies all averments in paragraph numbered 137.**

138.    Plaintiffs anticipate that all classes combined could have more than 100 current and former student members, making joinder impracticable.  Plaintiffs will meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

**ANSWER:    It denies all averments in paragraph numbered 138.**

139.    The questions of law and fact are common to all class members, even though Plaintiffs were enrolled in three different courses of study.  The deficiencies, misrepresentations, deceptions, contractual breaches and fraudulent acts and/or omissions are common to all members, regardless of their particular class.  Plaintiffs will meet the commonality requirement of Fed. R.Civ. P. 23(a)(2).

**ANSWER:    It denies all averments in paragraph numbered 139.**

140.    The proposed representatives' claims are typical of the claims of all potential members of the three sub-classes.  Plaintiffs' claims will meet the typicality requirement of Fed. R. Civ. P. 23(a)(3).

**ANSWER:      It denies all averments in paragraph numbered 140.**

141.    The proposed representatives and their counsel will fairly and adequately protect the interests of the three sub-classes.  Plaintiffs will meet the fairness and adequacy requirements of Fed. R. Civ. P. 23(a)(4).

**ANSWER:      It denies all averments in paragraph numbered 141.**

142.    This proposed class action is maintainable under Fed. R. Civ. P. 23(b)(1)(A), as prosecution of separate actions by individual members would create a risk of inconsistent determinations with respect to class members and incompatible standards of conduct for Vatterott.

**ANSWER:      It denies all averments in paragraph numbered 142.**

143.    This proposed class action is maintainable under Fed. R. Civ. P. 23(b)(2), as Vatterott has failed to act to remedy claims asserted herein, although previously sued for such claims in <u>Cienmy and Jaeckl v. Vatterott Educational Center, Inc. d/b/a Vatterott College</u>, Case No. 04-Cv-3531 (Sedgwick County District Court).

**ANSWER:      It denies all averments in paragraph numbered 143.**

144.    This proposed class action is maintainable under Fed. R. Civ. P. 23(b)(3), as common questions of law and fact exist as to Plaintiffs and proposed class members, making a class action superior to other forms of adjudication.  Plaintiffs each paid tuition and fees of approximately $20,000.00 to Vatterott under similar inducements from Vatterott and its

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 36 OF 45

Representatives. But for this proposed class action, individual students would not have the means, financial or otherwise, to address their grievances against Vatterott. Most, if not all, proposed class members live in the Wichita or central Kansas area.

**ANSWER:** **It denies all averments in paragraph numbered 144.**

### Computer Programming Sub-Class

145. Plaintiffs Aaron Borst, Nathan Cook, James Hadley, Carl Jamieson, Tiana Kennedy, Kenneth Lynch, Kenneth Miller, Shannon Pound, Bibi Sananikone, Scott A. Ward, and all other similarly situated current and former students, were or are enrolled in the computer programming course of study, and should comprise the Computer Programming Sub-Class.

**ANSWER:** **It admits that plaintiffs Aaron Borst, Nathan Cook, James Hadley, Carl Jamieson, Tiana Kennedy, Kenneth Lynch, Kenneth Miller, Shannon Pound, Bibi Sananikone, and Scott Ward are former students who were previously enrolled in the computer programming course of study at Vatterott, but denies all remaining averments in paragraph numbered 145.**

### Electrical Mechanic Sub-Class

146. Plaintiffs Bryan Hudson, Cliff Zollman and all other similarly situated current and former students were or are enrolled in the electrical mechanical course of study, and should comprise the Electrical Mechanic Sub-Class.

**ANSWER:** **It admits that Bryan Hudson and Cliff Zollman are former students who were previously enrolled in the electrical mechanical course of study at Vatterott, but denies all remaining averments in paragraph numbered 146.**

### Medical Office Assistant Sub-Class

147.   Plaintiff Rhonda Fowler and all other similarly situated current and former students were or are enrolled in the medical office assistant course of study and should comprise the Medical Office Assistant Sub-Class.

**ANSWER:   It admits that Rhonda Fowler is a former student who was previously enrolled in the medical office assistant course of study at Vatterott, but denies all remaining averments in paragraph numbered 147.**

148.   Plaintiffs are qualified to represent their respective sub-classes in this matter.

**ANSWER:   It denies all averments in paragraph numbered 148.**

### Count I
### (Claim for Breach of Contract)

149.   Plaintiffs incorporate by reference as if fully set forth herein all statements and allegations contained in paragraphs 1 through 148.

**ANSWER:   It incorporates by reference its responses to all averments of paragraphs numbered 1 through 148 of Plaintiffs' Second Amended Complaint – Class Action as if fully set forth herein.**

150.   Plaintiffs individually and respectively entered into Enrollment Agreements with Vatterott for their respective courses of study.

**ANSWER:   It admits that the plaintiffs named herein entered into Enrollment Agreements with Vatterott for their respective course of study, but denies all remaining averments in paragraph numbered 150.**

151.   The Enrollment Agreements between Plaintiffs and Vatterott specified the hours and weeks of instruction that would be provided in their respective courses of instruction.  Each

course of study was scheduled to meet for 60 weeks, and each week class was scheduled to meet Monday through Thursday for four and one-half hours each day.

**ANSWER:** **It denies all averments in paragraph numbered 151.**

152.    Plaintiff did not receive the hours and weeks of instruction promised by Vatterott in the Enrollment Agreements.

**ANSWER:** **It denies all averments in paragraph numbered 152.**

153.    Vatterott's failure to provide the hours and weeks of instruction promised in the Enrollment Agreement constitutes breach of contract.

**ANSWER:** **It denies all averments in paragraph numbered 153.**

154.    As a result of Vatterott's breach of the Enrollment Agreements, Plaintiffs have sustained damages in excess of $75,000, including out-of-pocket losses.

**ANSWER:** **It denies all averments in paragraph numbered 154.**

**Count II**
**(Claim for Declaratory Relief Pursuant to the Kansas Consumer Protection Act)**

155.    Plaintiffs incorporate by reference as if fully set forth herein all statements and allegations contained in paragraphs 1 through 154.

**ANSWER:** **It incorporates by reference its responses to all averments of paragraphs numbered 1 through 154 of Plaintiffs' Second Amended Complaint – Class Action as if fully set forth herein.**

156.    Plaintiffs are "consumers" as defined at K.S.A. 50-624(b).

**ANSWER:** **Admitted.**

157.    Vatterott is a "supplier" as defined at K.S.A. 50-624(j).

**ANSWER:** **Admitted.**

158.    The courses of study, instruction, use of equipment, laboratories, classrooms and other facilities necessary for teaching the courses of study, and job placement are "services as defined at K.S.A. 50-624(i).

**ANSWER:    Admitted.**

159.    Plaintiffs, individually and respectively, and Vatterott engaged in "consumer transaction[s]" as defined at K.S.A. 50-624(c).

**ANSWER:    Admitted.**

160.    Vatterott and its Representatives made representations knowingly or with reason to know that the services Vatterott provided to Plaintiffs had characteristics, uses, or benefits the services did not have.

**ANSWER:    It denies all averments in paragraph numbered 160.**

161.    Vatterott and its Representatives willfully used exaggeration, falsehood, innuendo, and ambiguity regarding material facts relating to its services.

**ANSWER:    It denies all averments in paragraph numbered 161.**

162.    Vatterott and its Representatives willfully failed to state material facts relating to its services.

**ANSWER:    It denies all averments in paragraph numbered 162.**

163.    Vatterott and is Representatives willfully concealed, suppressed and omitted material facts relating to its services.

**ANSWER:    It denies all averments in paragraph numbered 163.**

164.    Vatterott's actions constitute deceptive acts and/or practices under the Kansas Consumer Protection Act.

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 40 OF 45

**ANSWER:** **It denies all averments in paragraph numbered 164.**

165.    Vatterott took advantage of the Plaintiffs' individual and respective inabilities to reasonably protect the Plaintiffs' respective interests because of the Plaintiff's lack of familiarity with the subject matter of the consumer transaction.

**ANSWER:** **It denies all averments in paragraph numbered 165.**

166.    Upon information and belief, when Plaintiffs entered into their individual and respective consumer transactions with Vatterott the tuition and fees for the respective courses of study grossly exceeded the prices at which similar services were readily obtainable from other colleges or universities.

**ANSWER:** **It denies all averments in paragraph numbered 166.**

167.    Plaintiffs were unable to derive any material benefit from the subject of the consumer transactions they individually and respectively entered into with Vatterott.

**ANSWER:** **It denies all averments in paragraph numbered 167.**

168.    Upon information and belief, Vatterott was aware Plaintiffs would be unable to receive any material benefit from the subject of the consumer transactions, from the time the consumer transactions were entered until the time Plaintiffs completed their respective courses of study.

**ANSWER:** **It denies all averments in paragraph numbered 168.**

169.    The transactions into which Vatterott individually and respectively induced Plaintiffs were excessively one-sided in favor of Vatterott.

**ANSWER:** **It denies all averments in paragraph numbered 169.**

170.    Vatterott made misleading statements of opinion upon which Plaintiffs were likely to rely to their detriment.

**ANSWER:    It denies all averments in paragraph numbered 170.**

171.    Vatterott's actions constitute unconscionable acts and practices under the Kansas Consumer Protection Act.

**ANSWER:    It denies all averments in paragraph numbered 171.**

172.    As a result of Vatterott's violations of the Kansas Consumer Protection Act, Plaintiffs have suffered damages in excess of $75,000.00, including out-of-pocket losses.

**ANSWER:    It denies all averments in paragraph numbered 172.**

173.    As a result of Vatterott's violations of the Kansas Consumer Protection Act as set forth above, Plaintiffs are entitled to a declaratory judgment, injunctive and any other appropriate relief, pursuant to K.S.A. 50-634(c), and reasonable attorney fees, pursuant to K.S.A. 50-634(e).

**ANSWER:    It denies all averments in paragraph numbered 173.**

**Count III**
**(Claim for Fraud)**

174.    Plaintiffs incorporate by reference as if fully set forth herein, all statements and allegations contained in paragraphs 1 through 173 above.

**ANSWER:    It incorporates by reference its answer to all statements and allegations contained in paragraphs 1 through 173 of Plaintiffs' Second Amended Complaint – Class Action as if fully set forth herein.**

175.    Vatterott and its Representatives made false representations of existing and material fact to Plaintiffs.

**ANSWER:    It denies all averments in paragraph numbered 175.**

176.   Vatterott's false representations were known by Vatterott to be false or were recklessly made without knowledge concerning the veracity of the representations.

**ANSWER:   It denies all averments in paragraph numbered 176.**

177.   Vatterott's false representations were intentionally made for the purpose of inducing Plaintiffs, individually and respectively, to act upon those representations and enter into Enrollment Agreements with Vatterott.

**ANSWER:   It denies all averments in paragraph numbered 177.**

178.   Plaintiffs reasonably relied and acted upon the false representations of Vatterott and its Representatives by respectively executing Enrollment Agreements with Vatterott.

**ANSWER:   It denies all averments in paragraph numbered 178.**

179.   As a consequence of Vatterott's conduct as described above, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**ANSWER:   It denies all averments in paragraph numbered 179.**

### COUNT IV
### (Claim for Punitive Damages)

180.   Plaintiffs incorporate by reference as if fully set forth herein all statements and allegations contained in paragraphs 1 through 179.

**ANSWER:   It incorporates by reference its answer to all statements and allegations contained in paragraphs 1 through 179 of Plaintiffs' Second Amended Complaint – Class Action as if fully set forth herein.**

181.   As a consequence of Vatterott's conduct as described above, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**ANSWER:   It denies all averments in paragraph numbered 181.**

## AFFIRMATIVE DEFENSES AND ADDITIONAL RESPONSES

182.    Plaintiffs' claims, if any, are barred by the applicable statute of limitations.

183.    The Court lacks subject matter jurisdiction over plaintiffs' claims.

184.    Plaintiffs own conduct, and/or the conduct of others for whom Vatterott is not responsible, caused or contributed to the plaintiffs' damages, if any.

185.    Plaintiffs' claims, if any, are barred by the doctrine of estoppel.

186.    Plaintiffs have failed to mitigate their damages alleged herein, thus barring their claims, if any, in whole or in part.

187.    Plaintiffs' claims, if any, are barred because of plaintiffs' failure to plead them with particularity as required by Fed. R. Civ. P. 9 (b).

188.    Plaintiffs' claims, if any, are barred as educational malpractice claims under the holding of *Finstad v. Washburn University of Topeka*, 252 Kan. 465, 845 P. 2d 685 (1993).

189.    Damages for plaintiffs' claims, if any, are limited by the terms of the Enrollment Agreements (Contracts) Plaintiffs signed.

190.    Plaintiffs' claims, if any, are barred by the doctrines of *laches* and *estoppel*, both under principles of equity and pursuant to the terms of the Enrollment Agreements (Contracts) Plaintiffs signed.

191.    Plaintiffs are liable to Vatterott for its attorney fees, pursuant to the Enrollment Agreements (Contracts) Plaintiffs signed.

192.    Plaintiffs' averments are groundless, entitling Vatterott to recovery from Plaintiffs of Vatterott's reasonable attorney fees pursuant to K.S.A. § 50-634(e)(1).

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 44 OF 45

193.    Vatterott reserves the right to assert any and all affirmative defenses made known to it during discovery, which are specifically incorporated herein.

WHEREFORE, Vatterott Educational Center, Inc. prays for judgment in its favor on all counts and averments of Plaintiffs' Second Amended Complaint – Class Action, for Vatterott's costs and attorneys' fees herein, and for such other relief as this Court may deem just and proper.

Respectfully Submitted,


By: s/ Mitchell L. Herren
Mitchell L. Herren
Bar Number 20507
Jennifer R. Sager
Bar Number 22096
*Attorneys for Vatterott Educational Center, Inc.*
*d/b/a Vatterott College*
Hinkle Elkouri Law Firm L.L.C.
2000 Epic Center
301 North Main Street
Wichita, Kansas 67202
Telephone:    316-267-2000
Facsimile:    316-264-1556
E-mail: mherren@hinklaw.com

## DEMAND FOR JURY TRIAL

Vatterott Educational Center, Inc. d/b/a Vatterott College requests a jury trial of all issues so triable.

By s/ Mitchell L. Herren
Mitchell L. Herren, SC NO. 20507

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF KANSAS, CASE NO. 06-CV-1103-WEB-DWB
*Carl Jamieson, et al vs. Vatterott Educational Center, Inc. d/b/a Vatterott College*
ANSWER TO SECOND AMENDED COMPLAINT – CLASS ACTION
PAGE 45 OF 45

## CERTIFICATE OF SERVICE

     I hereby certify that on this 3rd day of April, 2007, I electronically filed the foregoing ANSWER with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Joseph H. Cassell
> Redmond & Nazar, L.L.P.
> 420 Farm Credit Building
> 245 North Waco Street
> Wichita, Kansas 67202
> Telephone:   316-262-8361
> Facsimile:   316-263-0640
> E-mail:       jhcassell@redmondnazar.com

> John W. Johnson
> Morris, Laing, Evans, Brock & Kennedy, Chtd.
> 300 North Mead, Suite 200
> Wichita, Kansas 67202
> Telephone:   316-262-2671
> Facsimile:   316-262-6226
> E-mail:       jjohnson@morrislaing.com

                s/ Mitchell L. Herren